UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARDELL JOSHUA SHAW, ) | |
| ) | |
| Petitioner, ) | Case No. C06-0424-JLR-JPD |
| ) | |
| v. ) | |
| ) | |
| KENNETH QUINN, ) | REPORT AND RECOMMENDATION |
| ) | |
| Respondent. ) | |
| _____) | |

INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Ardell Shaw is a state prisoner who is currently incarcerated at the Washington State Reformatory in Monroe, Washington. He seeks relief under 28 U.S.C. § 2254 from two separate 1999 Snohomish County Superior Court convictions for possession of cocaine with intent to deliver. Respondent filed an answer to the petition together with relevant portions of the state court record. Petitioner filed a reply to respondent's answer. The briefing is now complete and this matter is ripe for review. Following careful consideration of the record, this Court concludes that petitioner's § 2254 petition should be granted in part and denied in part, and that petitioner's state court convictions should be vacated.

REPORT AND RECOMMENDATION
PAGE - 1

## FACTUAL AND PROCEDURAL HISTORY

As noted above, petitioner seeks to challenge two separate convictions in this federal habeas action. The Washington Court of Appeals, on direct appeal of petitioner's conviction in cause number 99-1-00831-1, summarized the facts relevant to that conviction as follows:

> In an undercover operation, Officer Cheryl Braley arranged to purchase drugs from a person identifying himself as "D." Ardell Shaw arrived at the meeting in a car with two other people. Officer Braley approached Shaw, who was sitting in the front passenger seat, addressed him as "D," and introduced herself. Shaw stared at Officer Braley and asked for the time, but did not initiate a transaction. Eventually, Officer Braley turned around and walked into a grocery store. Police officers positioned nearby approached the car from behind. Shaw turned and saw the officers approaching. The officers watched Shaw make furtive movements, appearing to reach between the bucket seats into the back seat area.
>
> The officers arrested Shaw and the passengers for suspicion of drug loitering and searched the car incident to arrest. Tucked into the crack between the rear seat-back and the seat the police found a plastic baggie containing off-white rock-like chunks. They also found a metallic smoking pipe, hypodermic needles, several pagers, and a cellular phone. When an officer answered an incoming call during the search the caller asked for "D" and said to tell "D" that "this is about a lot of money." The pagers registered numbers that signified orders of crack cocaine. In addition, Shaw had $205 rolled up in his sock.
>
> The police forensic scientist determined that the baggie recovered from the car contained 6.4 grams of rock cocaine. After the Everett police department tested the cocaine, it included Shaw's case on a list of closed civil forfeiture cases that it sent to the regional evidence room. However, the list was imprecisely labeled "closed cases." As a result, the regional evidence room destroyed the evidence, including the cocaine seized in Shaw's case.
>
> The State charged Shaw with possession of cocaine with intent to deliver. Shaw moved to dismiss on the grounds that the State had improperly destroyed the cocaine. The trial court denied the motion, finding that there was simply a "miscommunication" rather than bad faith on the part of the police. A jury convicted Shaw and the court sentenced him within the standard range to 126 months confinement.

(Dkt. No. 13, Ex. 3 at 1-2.)

The Washington Court of Appeals, on direct appeal of petitioner's conviction in cause number

REPORT AND RECOMMENDATION
PAGE - 2

99-1-00853-1, summarized the facts relevant to that conviction as follows:

> On the evening of July 24, 1997, Everett Police Officers Harold Whatley and Daniel Smith responded to a report of suspected narcotics activity near the pay phones of an Everett gas station. After speaking to the station attendant, the officers drove their unmarked car around to the back of the station, where they observed several people standing near a pickup truck and a white van. After Officer Whatley turned on his car's spotlight, the officers got out of the car and observed appellant Shaw talking to a man named Brent Coyle. Michael Heiges was standing nearby; Sharon Fulmer was at the pay phone. Lars Gunderson and Susie Mulholland were inside the van.
>
> According to Officer Smith, Shaw looked "surprised" when he saw the officers and immediately turned away and started walking quickly toward a nearby fenced area containing trash dumpsters. The fence enclosing the dumpsters was 5-7 feet high and about 10 feet from the pickup.
>
> Officer Whatley yelled "Police. Nobody move," but Shaw continued on. by the time Officer Whatley moved around the pickup to go after Shaw, Shaw was returning. Officer Whatley immediately arrested Shaw for drug loitering. Officer Whatley did not observe anything in Shaw's hands and did not see Shaw attempt to discard anything. During a search incident to the arrest, police recovered $867 in small bills from Shaw's pocket.
>
> As Shaw walked toward the dumpsters, Officer Smith saw his arm make a "kind of a twisting, turning" movement or a "lunging movement." Officer Smith believed that Shaw had thrown something, but he was unable to see Shaw's hands and did not see anything fly through the air.
>
> After Shaw was arrested, Officer Smith searched inside the dumpster area and found a plastic baggie containing 243 rocks of cocaine on the ground behind the dumpsters. The baggie was not soiled or damp and appeared to be "newer-looking." Each of the rocks had a street value of about $20.
>
> Sharon Fulmer testified that she and Michael Heiges had accompanied Coyle to the gas station to help him find cocaine. After arriving at the station, Fulmer used the pay phone to page several contacts. A few minutes after Fulmer paged Susie Mulholland, the white van drove up. While Mulholland and Gunderson stayed in the van, Shaw got out and approached Coyle and Heiges. According to Fulmer and Heiges, Shaw said something about a debt that was owed from a previous transaction. Heiges testified that when the police arrived, he threw a crack pipe into the pickup from the passenger side, while Shaw walked a few feet past the truck before returning. Neither Fulmer nor Heiges saw anything in Shaw's hands and did not see him throw anything.

REPORT AND RECOMMENDATION
PAGE - 3

      After the first day of trial, Shaw's counsel withdrew, and Shaw proceeded pro se with the assistance of standby counsel. When testifying in his own defense, Shaw acknowledged that he had a history of using and selling cocaine. He maintained that he went to the gas station on July 24, 1997, only to collect money that Fulmer, Heiges, and Coyle owed him from a prior drug deal and denied possessing any drugs. When he saw the officers, Shaw initially decided to flee but then changed his mind and returned. Shaw admitted that the $867 found in his wallet came from "illegal activities" and that some of it may have come from drug sales.

      The jury found Shaw guilty as charged of possession of cocaine with intent to deliver, and was sentenced to a standard-range term.

(Dkt. No. 13, Ex. 4 at 1-3.)

Petitioner appealed both convictions to the Washington Court of Appeals, Division One. (*See id.*, Exs. 3 and 4.) On April 23, 2001, the Court of Appeals issued an unpublished opinion affirming petitioner's conviction under cause number 99-1-00831-1. (*Id.*, Ex. 3.) On July 2, 2001, the Court of Appeals issued an unpublished opinion affirming petitioner's conviction under cause number 99-1-00853-1. (*Id.*, Ex. 4.) In each case, petitioner sought review in the Washington Supreme Court, and in each case, the Supreme Court denied review. (*See id.*, Exs. 8, 9, 13, and 14.)

In August 2001, petitioner filed motions for relief from judgment in the Snohomish County Superior Court under cause numbers 99-1-00831-1 and 99-1-00853-1. (*Id.*, Exs. 16 and 19.) At issue in each motion was whether petitioner was entitled to relief from his convictions after it became known that the forensic scientist who tested the substances in both of petitioner's cases, and testified at both of petitioner's trials, acknowledged using heroin sent to the Washington State Patrol Crime Laboratory. (*See id.*) Petitioner argued in each case that his conviction should be set aside because the forensic scientist's conduct tainted that conviction. (*See id.*) Both motions were subsequently transferred to the Washington Court of Appeals for consideration as personal restraint petitions. (*Id.*,

REPORT AND RECOMMENDATION
PAGE - 4

Exs. 18 and 21.) After the motions were transferred, the Court of Appeals consolidated the two petitions. (Dkt. No. 13, Dkt. No. 22.)

The Court of Appeals subsequently linked petitioner's petitions with those of another petitioner, and transferred the cases to the Snohomish County Superior Court for a reference hearing. (*Id.*, Ex. 31.) The Superior Court held the reference hearing on September 15 and 23, 2003, and thereafter entered findings of fact and conclusions of law. (*Id.*, Ex. 32.)

On November 15, 2004, the Court of Appeals issued a published opinion denying the personal restraint petitions of petitioner and two other petitioners. *In re Delmarter*, 124 Wn. App. 154 (2004). Petitioner filed a motion for reconsideration in the Court of Appeals which was denied. (Dkt. No. 13, Exs. 33 and 34.)

Petitioner next filed a motion for discretionary review in the Washington Supreme Court. (*Id.*, Ex. 35.) Petitioner presented the following issues to the Supreme Court for review:

> 1. Where the State fails to disclose a principal prosecution witness had been routinely stealing and using drugs from a state crime laboratory, and fails to disclose the witness may have been under the influence of heroin at the time he testified in two jury trials, has the State violated its obligations under the due process clause of the Fourteenth Amendment, <u>Brady v. Maryland</u>, [373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)], and <u>Kyles v. Whitley</u>, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)]?
>
> 2. Does a published Court of Appeals opinion which subverts both the standards and the principles articulated by <u>Brady v. Maryland</u> and its progeny, constitute obvious error warranting review by this Court under RAP 13.5(b)(1)?
>
> 3. Does a published Court of Appeals opinion which pointedly eschews the analysis established by the United States Supreme Court regarding discovery violations, constitute obvious or probable error requiring review by this Court under RAP 13.5(b)(1) and (2)?

(*Id.*, Ex. 35 at 1-2.)

REPORT AND RECOMMENDATION
PAGE - 5

The Washington Supreme Court denied review.  (*Id.*, Ex. 36.)  Petitioner now seeks federal habeas review of his convictions.

## GROUNDS FOR RELIEF

Petitioner identifies six grounds for relief in his petition.  However, petitioner presents essentially the same claim in each of his first five grounds for relief.  Specifically, petitioner contends that the prosecution failed to disclose exculpatory or impeachment evidence regarding the State's forensic scientist, Michael Hoover, and that the state courts' adjudication of the issue was contrary to, or an unreasonable application of, clearly established federal law.  In his remaining claim, petitioner essentially alleges that Mr. Hoover's misconduct broke the chain of custody of the drug evidence presented at petitioner's trial.  Respondent concedes in his answer that petitioner has properly exhausted his claim regarding the prosecution's failure to disclose exculpatory or impeachment evidence.  Respondent argues, however, that petitioner did not fairly present his chain of custody claim to the Washington Supreme Court, and that any such claim is now procedurally barred.

## DISCUSSION

### Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was *contrary to*, or involved an *unreasonable application* of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d) (emphasis added).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the

REPORT AND RECOMMENDATION
PAGE - 6

state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id*. The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

<u>Failure to Disclose Exculpatory Evidence</u>

Petitioner asserts in his first five grounds for federal habeas relief that the prosecution failed to disclose exculpatory evidence regarding Michael Hoover, and that the state court adjudication of this issue was contrary to, or an unreasonable application of, clearly established federal law.

The Constitution requires that the prosecution disclose to an accused evidence that is "both favorable to the accused and 'material either to guilt or to punishment.'" *United States v. Bagley*, 473 U.S. 667, 674 (1985) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The duty to disclose encompasses both exculpatory evidence and impeachment evidence. *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing *Bagley*, 473 U.S. at 676). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitely*, 514 U.S. 419, 433-34 (1995) (citing *Bagley*, 473 U.S. at 682). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Kyles*, 514 U.S. at 434 (citing *Bagley*, 473 U.S. at 678).

The Washington Court of Appeals rejected petitioner's *Brady* claim in petitioner's personal restraint proceedings. The Court of Appeals explained its reasoning as follows:

REPORT AND RECOMMENDATION
PAGE - 7

Each petitioner also contends that he is entitled to a vacation of his conviction based on a violation of due process under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963). A *Brady* violation includes three components: (1) evidence favorable to the accused because it is exculpatory or impeaching; (2) willful or inadvertent suppression of that evidence by the State; and (3) resulting prejudice. *Brennan*, 117 Wn. App. at 805, 72 P.3d 182, citing *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L.Ed.2d 286 (1999). Prejudice occurs "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280, 119 S. Ct. 1936 (quotations omitted).

. . .

. . .

Shaw argues that the State violated *Brady* because Hoover failed to disclose the fact that he was using drugs at the time he testified in Shaw's trials.[1] Assuming without holding that this is so, Shaw nevertheless fails to demonstrate a reasonable probability that the results of his trials would have been different. If Hoover's misconduct had been known and revealed to the defense, we think it is unlikely that the State would have called him as a witness, despite the lack of evidence that he was using drugs at the time of the tests or that the tests were in any way inaccurate, because his credibility was simply devastated. Thus, the State likely would have been left with the field tests and circumstantial evidence. Although the defense would have been able to argue the weight the jury should give to the evidence, we are not persuaded that the result likely would have been different, even if Hoover had not testified. The July 24 case included testimony by two witnesses who were helping a third person arrange to buy cocaine. These witnesses testified that Shaw arrived with the people they had paged in order to buy the drugs, and approached them. When the police interrupted, Shaw threw a baggie into a nearby dumpster. One witness, an admitted cocaine user, testified that he recognized the substance Shaw attempted to discard as cocaine. Shaw also testified at trial that he had used and sold cocaine before, but denied that the substance found in the dumpster belonged to him.

The September 2 incident involved an undercover officer's attempt to arrange a drug deal, posing as a buyer named "Christy." Shaw arrived at the scene in a car, but did not actually engage in a deal. When officers approached the car, they observed Shaw make furtive movements, appearing to reach into the back seat. After the arrest,

---

[1] [Court of Appeals' footnote 6] Shaw also claims that because there was a strong inference that Hoover was using and stealing heroin in 1997 when he tested the materials at issue in Shaw's cases, Hoover was required to disclose these activities. But the reference court found that the evidence only supported a finding that Hoover began his misconduct in the fall of 1998.

REPORT AND RECOMMENDATION
PAGE - 8

> they found a plastic baggie containing off-white rock-like chunks tucked into the crack between the rear seat-back and the seat. Another passenger in the car testified that he went with Shaw to sell cocaine to "Christy" and that the baggie contained cocaine belonging to Shaw.
>
> Given this evidence, Shaw has failed to demonstrate a reasonable probability that the outcome of the trials would have been different, such that his *Brady* argument fails.

*In re Delmarter*, 124 Wn. App. at 167-69.

The Washington Supreme Court likewise rejected petitioner's *Brady* claim:

> Mr. Shaw contends that the Court of Appeals erred in rejecting his claim of reversible error under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* requires the State to disclose evidence that is favorable to the defense and material to guilt or punishment. *See in re Benn*, 134 Wn. 2d 868, 916, 952 P.2d 116 (1998). The Court of Appeals has previously considered *Brady* in connection with Hoover's misconduct. As the court noted in *In re Brennan*, 117 Wn. App. 797, 72 P.3d 182 (2003), a *Brady* violation requiring reversal has three components: (1) evidence that is favorable to the accused because it is either exculpatory or impeaching of a State witness, (2) intentional or inadvertent suppression of the evidence by the State, and (3) prejudice to the accused. Prejudice occurs if there is a reasonable probability that, had the evidence been disclosed, the result of the trial would have been different. *Id*. at 805; *Benn*, 134 Wn. 2d at 916. More particularly, the question is whether, in the absence of the suppressed evidence, the defendant nonetheless received a fair trial, meaning one resulting in a verdict worthy of confidence. *Benn*, 134 Wn. 2d at 916.
>
> The Court of Appeals assumed, without deciding, that the State violated *Brady* in connection with Hoover's misconduct, and further assumed that, had the State known of the misconduct, it would not have called Hoover to testify at Mr. Shaw's trials. The court nonetheless determined that Mr. Shaw "failed to demonstrate a reasonable probability that the outcome of the trial would have been different" in the absence of the violation. *In re Delmarter*, 124 Wn. App. at 169, ¶ 26.
>
> Mr. Shaw argues that that [sic] the court "utterly disregard[ed]" the proper standard of prejudice. Mot. for Disc. Rev. at 10. But it did not. Since there was no substantial evidence that Hoover was engaged in misconduct when he tested Mr. Shaw's samples in 1997, nor any evidence that Hoover did not accurately test the samples as cocaine, evidence that Hoover was stealing and using heroin during the time he later testified at Mr. Shaw's trials would have been only impeaching. The Court of Appeals thoroughly reviewed the untainted evidence and reached the reasonable conclusion that Mr. Shaw demonstrated no reasonable probability that the outcome of

REPORT AND RECOMMENDATION
PAGE - 9

> the trial court would have been different in the absence of the purported *Brady* violation. Mr. Shaw does not show that the court obviously or probably erred.

(Dkt. No. 13, Ex. 36.)

The state courts clearly identified the proper standard for analyzing petitioner's *Brady* claim; accordingly, the question for this Court is whether the state courts reasonably applied that standard to the facts of petitioner's case. In this Court's view, the state courts' application of federal law to the facts of petitioner's case was not reasonable.

In each of the cases at issue here, petitioner was charged with possession of cocaine with intent to deliver. One of the elements the prosecution must prove in order to establish that such an offense has been committed is that the defendant actually possessed cocaine. *See* RCW 69.50.401. A review of the transcripts of petitioner's trial reflects that the only direct evidence offered to establish that the substance possessed by petitioner was, in fact, cocaine, was the testimony of Michael Hoover. Mr. Hoover tested the cocaine involved in petitioner's two cases in 1997, but did not testify until 1999. While there was no substantial evidence that Mr. Hoover was engaged in any misconduct at the time he tested the samples, there was evidence that Mr. Hoover was engaged in misconduct at the time he testified. (*See* Dkt. No. 13, Ex. 32.)

The state courts concluded that because there was no evidence that Mr. Hoover was engaged in misconduct at the time he tested the samples, or that his tests were inaccurate, the evidence of Mr. Hoover's misconduct would have been only impeaching. The state courts further concluded that petitioner had not demonstrated a reasonable probability that the outcome of his trial would have been different in the absence of evidence of Mr. Hoover's misconduct. The Court of Appeals reasoned that if Mr. Hoover's misconduct had been known and revealed to the defense, it is unlikely that the state would have called him as a witness because "his credibility was simply devastated." *In re Delmarter*,

REPORT AND RECOMMENDATION
PAGE - 10

124 Wn. 2d at 168.  The Court of Appeals suggested that the state would then have been left with the field tests of the suspected cocaine and circumstantial evidence, none of which would likely have changed the result of petitioner's trials.   The Washington Supreme Court concurred with this conclusion of the Court of Appeals.

The state courts' reasoning is troubling in at least two significant respects.  First, a review of the record suggests that if Mr. Hoover's misconduct had been known prior to petitioner's trial, the charges against petitioner would likely have been dismissed.  The agency which prosecuted petitioner, the Snohomish County Prosecutor's Office, developed a policy for dealing with cases involving Mr. Hoover after his misconduct was discovered.  That policy called for dismissal of any "possession with intent" cases in which there was not both a good confession to the identity of the substance *and* a positive field test.  (*See* Dkt. No. 6, Appendix 5.)  While there were positive field tests available in petitioner's cases, nothing in the record suggests that the prosecution had a "good" confession to the identity of the substance at issue in either of petitioner's cases.  Thus, it seems unlikely that the Snohomish County prosecutor would have proceeded against petitioner at all had Mr. Hoover's misconduct been revealed prior to petitioner's trial.[2]  The state courts' speculation that  the prosecution would simply have opted not to call Mr. Hoover if the misconduct had been discovered prior to petitioner's trial is not supported by the record as a whole.

---

[2] The record includes an affidavit of Michael T. Downes, Assistant Chief Criminal Deputy Prosecutor for Snohomish County, dated February 21, 2002. (*See* Dkt. No. 6, Appendix 5 at 4-5.) The affidavit was apparently prepared in conjunction with petitioner's personal restraint proceedings.  Mr. Downes stated therein that his office limited application of the policy to cases potentially affected by Mr. Hoover's misconduct and he identified the cut-off date as "no earlier than 1998." *Id*.  While the affidavit implies that petitioner's cases would not have fallen within the requisite time frame for application of the policy, this is not entirely clear as petitioner was certainly tried during the requisite time frame even though the drugs at issue were tested prior to the cut-off date.

REPORT AND RECOMMENDATION
PAGE - 11

Second, while the record appears to indicate that positive field tests were available in petitioner's cases, (*see* Dkt. No. 13, Ex. 28-A, Exs. 2 and 3), no such evidence was presented at either of petitioner's trials. If such evidence had been presented, it would have corroborated the testimony of Mr. Hoover and might have reduced the impact that the *Brady* material would have had on Mr. Hoover's credibility. However, because the field test evidence was not presented at trial, the state courts were left to speculate on the likely outcome of a trial in which Mr. Hoover did not testify and the field test evidence was admitted instead. The state courts opined that such a trial was not likely to resolve in petitioner's favor, and that petitioner therefore failed to establish the prejudice necessary to support his claimed *Brady* violation.

However, the fact that the state courts were able to conjure up circumstances under which petitioner might have been convicted on different evidence does not satisfy this Court that the verdicts which were rendered in the trials which actually were conducted are worthy of confidence. Moreover, this Court questions whether the trials envisioned by the state courts would have led to the results they suggest. This is particularly so with respect to petitioner's trial under cause number 99-1-00831-1 where the drugs at issue were destroyed prior to trial at the request of the Everett Police Department. (*See* Dkt. No. 6, Appendix 4.) Without the testimony of Mr. Hoover, the only evidence the State would have had to support the fact that the substance possessed by petitioner was cocaine was a police report indicating a positive field test. Competent counsel, which petitioner apparently had, might well have been able to create a reasonable doubt in the minds of the jurors in such circumstances.

In *Kyles*, the Supreme Court, speaking with respect to the prejudice issue, explained that "the question is not whether the defendant would more likely than not have received a different verdict with

REPORT AND RECOMMENDATION
PAGE - 12

the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434. The state courts answered the question of whether petitioner would more likely than not have received different verdicts if the *Brady* material had been available. They failed to answer the much more important question of whether, in the absence of that material, petitioner received trials resulting in verdicts which were worthy of confidence. The fact that the state courts had to engage in substantial speculation to reach the conclusion that the *Brady* material would not have affected the verdicts in petitioner's cases suggests to this Court that the verdicts which were rendered in petitioner's trial were not worthy of confidence.

For the foregoing reasons, this Court concludes that the state courts' conclusion that there was no *Brady* violation constitutes an unreasonable application of clearly established federal law. Accordingly, this Court recommends that petitioner's federal habeas petition be granted with respect to his *Brady* claim.

## Chain of Custody Claim

Petitioner asserts in his sixth ground for relief that Mr. Hoover's misconduct broke the chain of custody of the drug evidence presented at petitioner's trial. As noted above, respondent argues in his answer to the petition that this claim has not been properly exhausted because it was never fairly presented to the Washington Supreme Court for review. Respondent further argues that petitioner is now procedurally barred from presenting his chain of custody claim to the state courts. Petitioner, in his reply brief, does not challenge respondent's contention that his chain of custody claim is unexhausted and procedurally barred. And, in fact, the record supports respondent's arguments.

There is no indication in the record that petitioner presented his chain of custody claim to the Washington Supreme Court as a claim implicating federal constitutional concerns. Accordingly,

petitioner's chain of custody claim has not been properly exhausted for purposes of federal habeas review. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982).

When a petitioner fails to exhaust his state court remedies and the court to which petitioner would be required to present his claim in order to satisfy the exhaustion requirement would now find the claim to be procedurally barred, there is a procedural default for purposes of federal habeas review. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Because more than one year has passed since petitioner's convictions became final in the state courts, he would likely be barred from returning to the state courts to present his chain of custody claim. *See* RCW 10.73.090. Accordingly, there is a procedural default for purposes of federal habeas review and the claim is not cognizable in these proceedings absent a showing of cause and prejudice. *Coleman*, 501 U.S. at 750. Petitioner makes no such showing. Accordingly, petitioner's federal habeas petition should be denied with respect to his chain of custody claim.

## CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's federal habeas petition be granted with respect to his *Brady* claim and denied with respect to his chain of custody claim. This Court further recommends that petitioner's convictions be vacated. A proposed Order accompanies this Report and Recommendation.

DATED this 15th day of February, 2007.

/s/ James P. Donohue
JAMES P. DONOHUE
United States Magistrate Judge