UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ARDELL JOSHUA SHAW,

                    Petitioner,

          v.

KENNETH QUINN,

                    Respondent.

CASE NO. C06-424JLR

ORDER

## I.  INTRODUCTION

This matter comes before the court upon a Report and Recommendation ("R&R") of the Honorable James P. Donohue, Magistrate Judge (Dkt. # 20) on Ardell Shaw's petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Judge Donohue recommends granting in part and denying in part the petition.  Having reviewed the R&R, Respondent's objections, and the balance of the record in this case, the court ADOPTS IN PART the R&R.  The court DENIES Mr. Shaw's habeas petition (Dkt. # 1), DENIES Mr. Shaw's motion for release from custody (Dkt. # 23), and DISMISSES this action with prejudice.

Mr. Shaw, who is proceeding pro se, challenges two Washington State court convictions for possession of cocaine with intent to deliver.  His habeas petition presents

ORDER – 1

two claims for relief[1] based on the misconduct of a forensic chemist at the state crime laboratory, Michael Hoover.  Mr. Hoover tested the drug evidence in Mr. Shaw's cases and then testified to his findings during Mr. Shaw's 1999 trials.  In 2000, Mr. Hoover admitted that he stole heroin from the state crime laboratory, and regularly used it to self-medicate his chronic back pain, commencing in the fall of 1998.  In his first claim for relief, Mr. Shaw alleges that the prosecution failed to disclose Mr. Hoover's misconduct, constituting a violation of Brady v. Maryland, 373 U.S. 83 (1963).  See Pet. at 7.  In his second claim, Mr. Shaw alleges that Mr. Hoover's misconduct disrupted the chain of custody of drug evidence presented at his trials.  Id.

Judge Donohue found that Mr. Shaw's claim relating to the chain of custody has not been exhausted and therefore is procedurally barred.  The court adopts this recommendation.  The court does not adopt Judge Donohue's recommendation to the extent that he recommends vacating Mr. Shaw's convictions on the basis of his Brady claim.  The court dismisses this claim.  As described below, the application of well-settled legal principles to the facts of this case requires the court to deny Mr. Shaw's habeas petition in its entirety.

## II.  BACKGROUND

Judge Donohue's R&R provides a thorough background of this matter, which the court incorporates by reference.  The court provides a brief summary here.

**A.  Trial Court Proceedings**

Mr. Shaw challenges two separate convictions in the Snohomish County Superior Court, both in 1999, for possession of cocaine with intent to deliver.

---

[1]While Mr. Shaw asserts six separate grounds for relief, the first five essentially present the same claim.  See Pet. at 7.

ORDER – 2

The first conviction involved events occurring on July 24, 1997 (the "July 24 incident").[2]  Everett Police Officers Harold Whatley and Daniel Smith responded to a report of suspected narcotics activity at a gas station.  The officers observed several people standing near a pickup truck and a van, including Mr. Shaw, who was talking to a man named Brent Coyle.  Michael Heiges was standing nearby, as was Sharon Fulmer.  According to testimony offered at trial, when Mr. Shaw saw the officers, he walked quickly towards a nearby fenced area containing trash dumpsters.  Despite Officer Whatley's command, "nobody move," Mr. Shaw continued towards the dumpster area.  Officer Smith observed Mr. Shaw make a twisting or lunging movement, which led Officer Smith to believe that Mr. Shaw had thrown something into the nearby fenced area.  Mr. Shaw then returned to the vicinity of the officers.  The officers arrested Mr. Shaw for drug loitering.  Officer Smith searched the dumpster area and found an unsoiled plastic baggie containing suspected cocaine.  A search of Mr. Shaw's person revealed a pipe, hypodermic needles, and several hundred dollars in cash.

The state charged Mr. Shaw with possession of cocaine with intent to deliver.  The forensic chemist, Mr. Hoover, tested the alleged cocaine on September 19, 1997.  Trial took place in October 1999, during which Mr. Hoover testified to his finding that the substance tested positive for cocaine.  Officers Whatley and Smith, Ms. Fulmer, and Mr. Heiges also testified for the prosecution.  After the first day of trial, Mr. Shaw's counsel withdrew, and Mr. Shaw proceeded pro se with the assistance of standby counsel.  Mr. Shaw testified in his own defense and gave his own closing argument.  The jury convicted Mr. Shaw, and the court sentenced him to 108 months imprisonment.

---

[2]The following facts are drawn from the unpublished opinion of the Washington Court of Appeals affirming, on direct appeal, Mr. Shaw's conviction arising from the July 24 incident.  See Admin. R., Ex. 3 at 1-2 (Dkt. # 13).  Hereinafter, all citations to exhibits refer to the Administrative Record (Dkt. # 13).

ORDER – 3

The second conviction involved events occurring on September 2, 1997 (the "September 2 incident").[3]  During an undercover operation, Officer Cheryl Braley, posing as "Christy," arranged to buy cocaine from Mr. Shaw at an Albertsons parking lot.  Mr. Shaw arrived at the meeting in a car with two other people, including Ronald Waclawski.  As police officers positioned nearby moved towards the car, they observed Mr. Shaw furtively reach between the bucket seats into the back seat area.  The officers arrested Mr. Shaw and the passengers for suspicion of drug loitering and searched the car incident to arrest.  Tucked into the crack between the rear seat-back and the seat, the police found a plastic baggie containing off-white rock-like chunks, which they suspected to be crack cocaine.  They also found a metallic smoking pipe, hypodermic needles, and $205 in cash.

The state charged Mr. Shaw with possession of cocaine with intent to deliver.  Forensic chemist Mr. Hoover tested the drug evidence on November 18, 1997, and determined that the baggie contained 6.4 grams of rock cocaine; he testified to this finding during Mr. Shaw's December 1999 trial.  Mr. Waclawski also testified for the prosecution, as did Officer Braley and two other officers who were present on the scene.  The jury convicted Mr. Shaw, and the court sentenced him to 126 months imprisonment.

**B.    State Court Direct Appeal and Personal Restraint Petition**

Mr. Shaw appealed both convictions to the Washington Court of Appeals and the court affirmed the convictions in unpublished opinions.  Exs. 3, 4.  Mr. Shaw sought review in the Washington Supreme Court, and in each case the court denied review.  Exs. 8, 9, 13, 14.

In August 2001, Mr. Shaw filed motions for relief from judgment in both cases in the Snohomish County Superior Court.  Exs. 16, 19.  At issue in each motion was

---

[3]The following facts are drawn from the unpublished opinion of the Washington Court of Appeals affirming, on direct appeal, Mr. Shaw's conviction arising from the September 2 incident.  See Ex. 4 at 1-3.

ORDER – 4

whether Mr. Shaw was entitled to relief from his convictions after it became known that the forensic chemist who tested the substances in both of Mr. Shaw's cases and testified in both of Mr. Shaw's trials acknowledged using heroin sent to the state crime laboratory. Id. Mr. Shaw argued that his convictions should be set aside because Mr. Hoover's drug use tainted the convictions. Id. The superior court transferred Mr. Shaw's motions to the Washington Court of Appeals for consideration as personal restraint petitions ("PRP"). Exs. 18, 21.

The Washington Court of Appeals linked Mr. Shaw's petitions with those of two other petitioners whose PRPs involved the misconduct of the forensic chemist, Mr. Hoover. The court of appeals transferred the cases to the Snohomish County Superior Court for an evidentiary hearing concerning the timeframe of Mr. Hoover's drug use and the manner in which it progressed. Ex. 31. The superior court conducted hearings on September 15 and 23, 2003, and thereafter entered written findings of fact and conclusions of law. Ex. 32. The superior court found by a preponderance of the evidence that Mr. Hoover's heroin use began at least in the fall of 1998, although it noted that his heroin use may have begun earlier. Id.

Following the evidentiary hearing, on November 15, 2004, the court of appeals issued a published opinion denying the PRPs of Mr. Shaw and the two other petitioners. As to Mr. Shaw's Brady claim, the court found that notwithstanding Mr. Hoover's heroin use at the time he testified in the 1999 trials, Mr. Shaw failed to establish a reasonable probability that the results of his trials would have been different even if the prosecution had disclosed Mr. Hoover's misconduct. See In re Delmarter, 101 P.3d 111, 117-18 (Wash. Ct. App. 2004).

Mr. Shaw filed a motion for discretionary review in the Washington Supreme Court, wherein he presented the following issues:

(1)     Where the State fails to disclose a principal prosecution witness had been routinely stealing and using drugs from a state crime laboratory, and fails to disclose the witness may have been under the influence of heroin at the time he testified in two jury trials, has the State violated

ORDER – 5

its obligations under the due process clause of the Fourteenth Amendment, <u>Brady v. Maryland</u>, and <u>Kyles v. Whitley</u> [514 U.S. 419 (1995)]?

(2)     Does a published Court of Appeals opinion which subverts both the standards and principles articulated in   <u>Brady v. Maryland</u> and its progeny, constitute obvious error warranting review by this court under RAP 13.5(b)(1)?

(3)     Does a published Court of Appeals opinion which pointedly eschews the analysis established by the United States Supreme Court regarding discovery violations, constitute obvious or probable error requiring review by this Court under RAP 13.5(b)(1) and (2)?

Ex. 35 at 1-2.

The Washington Supreme Court, through its Commissioner, denied review in an unpublished three-page opinion. Ex. 36. Mr. Shaw now seeks federal habeas review of his convictions.

## III.  ANALYSIS

In his first claim for relief (set out as grounds one through five in the petition), Mr. Shaw alleges a <u>Brady</u> violation. He contends that the prosecution failed to disclose exculpatory or impeachment evidence regarding the forensic chemist, Mr. Hoover, and that the state courts' adjudication of the issue was contrary to, or an unreasonable application of clearly established federal law. In his remaining claim, Mr. Shaw alleges that Mr. Hoover's misconduct broke the chain of custody of drug evidence presented at his trial.

Judge Donohue concluded that Mr. Shaw's second claim is procedurally barred, but that the first claim entitles Mr. Shaw to habeas relief. The court turns to the second claim first.

### A.     Failure to Exhaust the Claim Relating to Chain of Custody

As to Mr. Shaw's claim that Mr. Hoover's drug use broke the chain of custody of evidence presented at his trials, Judge Donohue found that Mr. Shaw failed to fairly

ORDER – 6

present this claim to the Washington Supreme Court.[4]  Judge Donohue concluded that this claim is procedurally barred because a federal habeas petitioner challenging a state court conviction is generally not entitled to relief unless he has exhausted the available state court remedies.  See Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citing 28 U.S.C. § 2254(b)).  The court agrees and adopts the analysis and recommendation of Judge Donohue in dismissing this claim.

As to Mr. Shaw's Brady claim, Respondent concedes that Mr. Shaw fairly presented, and hence exhausted, this claim in his state PRP proceedings.

**B.     State Court Adjudication of the Brady Claim**

Judge Donohue found that the state courts' analysis of the Brady claim was unreasonable, and on this basis, granted Mr. Shaw's habeas petition.  The court does not adopt this recommendation.  For the reasons set forth below, the court finds that the state court reasonably concluded that the evidence of Mr. Hoover's misconduct was not material to the outcome of Mr. Shaw's trials.  Accordingly, the court dismisses this claim.

**1.     Standards and Scope of Review**

The court begins with the standard governing review of a state court's adjudication of a habeas claim.  The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits a federal court from granting habeas relief unless a state court's decision (1) was contrary to clearly established federal law, as determined by the Supreme Court, or (2) involved an unreasonable application of clearly established federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d)(1).  Under the "contrary to" clause, a federal court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  Under the "unreasonable

---

[4]In his motion for discretionary review of the PRP to the Washington Supreme Court, Mr. Shaw did not specifically argue as a federal or constitutional claim that Mr. Hoover's alleged misconduct broke the chain of custody.  See Ex. 35 at 1-2.

ORDER – 7

application" clause, a federal court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Id. at 412-13. That is, the state court decision must not only be an incorrect application of established federal law, but also an "objectively unreasonable" one. Id. at 409-11. AEDPA instructs a federal court to deny relief unless it is "firmly convinced" that a petitioner's constitutional rights have been violated. Id. at 389.

The court must initially identify the state court decision that triggers AEDPA's standards of review. The court looks to the state's last reasoned decision. Ylst v. Nunnmaker, 501 U.S. 797, 802-04 (1991). Here, the last reasoned decision is the Washington Supreme Court's denial of discretionary review. That court, through its Commissioner, issued a three-page order, concluding with little explanation that the court of appeals reached a "reasonable conclusion" in denying Mr. Shaw's PRP. See Ex. 36 at 2-3. In so doing, the supreme court substantially incorporated the reasoning from the court of appeals' decision. See Ylst, 501 U.S. at 803 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim [are presumed to] rest upon the same ground."). Accordingly, this court will consider both of these decisions simultaneously in order to fully ascertain the reasoning of the state's final decision in dismissing Mr. Shaw's claim. See Lambert v. Blodgett, 393 F.3d 943, 970 (9th Cir. 2004) (discussing both the court of appeals' decision and that of the state supreme court, where the latter decision "largely adopted" the reasoning of the court of appeals).

**2.   The Brady Rule**

It is well established that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. Both impeachment evidence and exculpatory evidence "fall[ ] within the Brady rule." United States v. Bagley, 473 U.S. 667, 676

ORDER – 8

(1985).   The prosecution "has a duty to learn of any favorable evidence known to the others acting on the government's behalf . . . ."  Kyles, 514 U.S. at 437.

To succeed on a Brady claim, a petitioner must establish three essential elements: (1) the evidence must be favorable to the accused; (2) it must have been suppressed by the government, either willfully or inadvertently; and (3) the suppression must have been material.  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Kyles, 514 U.S. at 433-34 (citation omitted).  A "reasonable probability" of a different result is shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."  Id. at 434.

In determining whether a petitioner has demonstrated materiality, a court must consider the undisclosed evidence in light of the evidence presented by the prosecution, including forensic and other physical evidence, and the testimony of other witnesses.  Strickler, 527 U.S. at 292-94.  In Wood v. Bartholomew, the United States Supreme Court warned that a court may not base its assessment of a reasonable probability on "mere speculation" as to counsel's preparation in a different manner, or the discovery and introduction of additional evidence.  516 U.S. 1, 6 (1995).

### 3.        The State Courts' Analysis of Materiality Under Brady

The Washington Court of Appeals rejected Mr. Shaw's claim, finding that under the third prong of Brady, the evidence of Mr. Hoover's misconduct was not material to the outcome of his trials.  The court of appeals identified the proper standard for analyzing a Brady claim[5]; applying that standard to the facts of Mr. Shaw's case, the court held:

---

[5]The court does not recite the court of appeals' annunciation of the law.  It suffices to observe that the court identified Brady, accurately described its three prongs, and cited Strickler, 527 U.S. at 281-82, as providing the appropriate standard for assessing prejudice.  See In re Delmarter, 101 P.3d at 117-18.

ORDER – 9

Shaw argues that the State violated Brady because Hoover failed to disclose the fact that he was using drugs at the time he testified in Shaw's trials.[6] Assuming without holding that this is so, Shaw nevertheless fails to demonstrate a reasonable probability that the results of his trials would have been different. If Hoover's misconduct had been known and revealed to the defense, we think it is unlikely that the State would have called him as a witness, despite the lack of evidence that he was using drugs at the time of the tests or that the tests were in any way inaccurate, because his credibility was simply devastated. Thus, the state likely would have been left with the field tests and circumstantial evidence. Although the defense would have been able to argue the weight the jury should give to the evidence, we are not persuaded that the result likely would have been different, even if Hoover had not testified. The July 24 case included testimony by two witnesses who were helping a third person arrange to buy cocaine. These witnesses testified that Shaw arrived with the people they had paged in order to buy the drugs, and approached them. When the police interrupted, Shaw then threw a baggie into a nearby dumpster. One witness, an admitted cocaine user, testified that he recognized the substance Shaw attempted to discard as cocaine. Shaw also testified at trial that he had used and sold cocaine before, but denied that the substance found in the dumpster belonged to him.

The September 2 incident involved an undercover officer's attempt to arrange a drug deal, posing as a buyer named "Christy." Shaw arrived at the scene in a car, but did not actually engage in a deal. When officers approached the car, they observed Shaw make furtive movements, appearing to reach into the back seat. After the arrest, they found a plastic baggie containing off-white rock-like chunks tucked into the crack between the rear seat-back and the seat. Another passenger in the car testified that the he went with Shaw to sell the cocaine to "Christy" and that the baggie contained cocaine belonging to Shaw.

Given this evidence, Shaw has failed to demonstrate a reasonable probability that the outcome of the trials would have been different, such that his Brady argument fails.

In re Delmarter, 101 P.3d at 118.

In denying review, the Commissioner of the Washington Supreme Court likewise identified the correct legal standard and largely adopted the court of appeals' analysis:

The Court of Appeals assumed, without deciding, that the State violated Brady in connection with Hoover's misconduct, and further assumed that, had the State known of the misconduct, it would not have called Hoover to testify at Mr. Shaw's trials. The court nonetheless determined that Mr. Shaw "failed to demonstrate a reasonable probability that the outcome of the trials would have

---

[6][Court of Appeals' footnote 6]. Shaw also claims that because there was a strong inference that Hoover was using and stealing heroin in 1997 when he tested the materials at issue in Shaw's cases, Hoover was required to disclose these activities. But the [superior] court found that the evidence only supported a finding that Hoover began his misconduct in the fall of 1998.

ORDER – 10

been different" in the absence of the violation. <u>In re Delmarter</u>, 124 Wn. App. at 169, ¶ 26.

> Mr. Shaw argues that that [sic] the court "utterly disregard[ed]" the proper standard of prejudice. Mot. For Disc. Rev. at 10. But it did not. Since there was no substantial evidence that Hoover was engaged in misconduct when he tested Mr. Shaw's samples in 1997, nor any evidence that Hoover did not accurately test the samples as cocaine, evidence that Hoover was stealing and using heroin during the time he later testified in Mr. Shaw's trials would have been only impeaching. The Court of Appeals thoroughly reviewed the untainted evidence and reached the reasonable conclusion that Mr. Shaw demonstrated no reasonable probability that the outcome of the trial court would have been different in the absence of the purported Brady violation. Mr. Shaw does not show that the court obviously or probably erred.

Ex. 36 at 1-3.

As to the state courts' findings of fact concerning the timeframe of Mr. Hoover's misconduct, those findings are binding unless Mr. Shaw rebuts them by clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1). The court of appeals found that Mr. Hoover began stealing and using heroin from the lab in 1998, after he tested the cocaine samples in 1997, but before he testified in Mr. Shaw's cases in 1999. <u>In re Delmarter</u>, 101 P.3d at 116-17. On this basis, the court concluded that the evidence could have been used to impeach Mr. Hoover's testimony, but that it did not bear on the "*accuracy* of the original tests performed at a time when no substantial evidence exists that Hoover was stealing and abusing heroin." <u>Id</u>. at 117 (emphasis in original). The supreme court accepted this finding, stating that the evidence "would have been only impeaching." Ex. 36 at 2. Mr. Shaw has not demonstrated, contrary to the state courts' determination, that Mr. Hoover was using heroin on-the-job at the time he tested the samples.[7] This court, therefore, considers Mr. Hoover's misconduct as the state court did – as bearing on Mr. Hoover's credibility, but not as invalidating the drug test results.

The court of appeals assumed that the prosecution's failure to disclose the impeachment evidence against Mr. Hoover constituted a <u>Brady</u> violation. Nonetheless,

---

[7]Nor is Mr. Shaw entitled to an evidentiary hearing where the factual basis of his claim was fully developed, through an evidentiary hearing, in the state court proceedings. <u>See</u> <u>Williams</u>, 529 U.S. at 430 (citing 28 U.S.C. § 2254(e)(2)).

ORDER – 11

the court of appeals dismissed Mr. Shaw's claim, concluding that he failed to demonstrate the materiality of the suppressed evidence such that there was a reasonable probability of a different result at trial. The supreme court adopted this conclusion. Mr. Shaw argues that the state courts "reinvented" the materiality prong of <u>Brady</u> as applied to the facts of his case, constituting an unreasonable application of clearly established federal law. <u>See</u> Pet. at 5.

Where, as here, the prosecution suppresses impeachment evidence, clearly established federal law instructs a court to assess materiality by gauging the impact of the withheld evidence in view of the strength of the prosecution's case, paying close attention to the importance of the witness's testimony. <u>See</u>, <u>e.g.</u>, <u>Banks v. Dretke</u>, 540 U.S. 668, 700-01 (2004) (finding that impeachment evidence was material where witness was "the centerpiece" of a case that lacked physical evidence); <u>Strickler</u>, 527 U.S. at 292-93 (finding that impeachment evidence against even an important witness was not material when the record provided strong support for the conviction apart from the witness's testimony).

Mr. Shaw aptly observes that the court of appeals deviated from the correct analysis of materiality in hypothesizing about what might have been. The court of appeals observed that if Mr. Hoover's drug use had been known and revealed to the defense, it is unlikely that the prosecution would have called him as a witness because "his credibility was simply devastated." <u>In re Delmarter</u>, 101 P.3d at 118. The court of appeals further opined that the state "would have been left with the field tests and the circumstantial evidence." <u>Id</u>. While the record indicates that positive field tests were available in both of Mr. Shaw's cases, the prosecution did not present this evidence in either trial. <u>See</u> Exs. 2, 3 (probable cause statements); Exs. 47-49 (trial transcripts). The court of appeals effectively speculated that the prosecution would have relied on the introduction of positive field tests to prove that the substance was cocaine. In so doing, the court of appeals departed from the United States Supreme Court's directive in <u>Bartholomew</u>, 516 U.S. at 6, that a court may not base its materiality analysis on "mere

ORDER – 12

speculation" as to counsel's preparation in a different manner or the introduction of evidence not admitted during trial.

Even acknowledging this misstep, AEDPA requires a federal court to attend "with the utmost care" to state court decisions, "including all of the reasons supporting their decisions, before concluding that those proceedings were infected by constitutional error." Williams, 529 U.S. at 386. Indeed, the court of appeals did not exclusively rest its analysis on speculation as to what might have been; the court also considered the impact of the withheld evidence in view of the strength of the prosecution's case in each trial. The court of appeals concluded that there was strong circumstantial evidence in each trial showing that the substance was cocaine. In light of this independent evidence, the court of appeals held that Mr. Shaw could not demonstrate a reasonable probability that the impeachment of Mr. Hoover would have affected the outcome of the trials. Such an analysis is a sound application of clearly established Supreme Court law governing the materiality prong of Brady. Moreover, it was this analysis, i.e., the court of appeals' "review of the untainted evidence," which the Washington Supreme Court adopted. See Ex. 36 at 2-3 ("The Court of Appeals *throughly reviewed the untainted evidence* and reached the reasonable conclusion that Mr. Shaw demonstrated no reasonable probability that the outcome of the trial court would have been different in the absence of the purported Brady violation.") (emphasis added). Because the scope of this court's review is restricted to the state's last reasoned decision, the court focuses its analysis on this rationale, which the supreme court explicitly adopted.

Turning to the state courts' reliance on the untainted evidence introduced by the prosecution, the court finds that the state courts reasonably concluded that the Brady violation was immaterial to the outcome of the trials. Contrary to Mr. Shaw's contention that there was "absolutely no other evidence introduced to establish the nature of the substances," Pet. at 11, the record indicates that there was significant circumstantial evidence introduced in each trial showing that the substance was cocaine. Moreover, the record does not suggest that Mr. Hoover was the centerpiece of the prosecution's case in

ORDER – 13

either trial.  The court here briefly recounts the testimony of other witnesses in each trial. A review of this testimony demonstrates the strength of the prosecution's cases and also reveals that the testimony before each jury was replete with references to cocaine.

As to the July 24 incident, Officer Whatley testified that the officers were responding to a reported drug sale when they encountered Mr. Shaw.  Ex. 47 at 27-34. Officer Whatley testified that the baggie at issue contained a large amount of a white substance, which he suspected to be crack cocaine.  Ex. 47 at 37-38; Ex. 49 at 284-85. Officer Smith specifically testified that the baggie contained 243 rocks of cocaine.  Ex. 49 at 284-85.  Officer Whatley testified that a search of Mr. Shaw's person revealed a pipe, hypodermic needles, and several hundred dollars in cash.  Ex. 47 at 42-46.  In addition, Ms. Fulmer testified that she, Mr. Heiges, and Mr. Coyle had gone to the gas station to buy crack cocaine.  Id. at 80-87.  Ms. Fulmer testified that Mr. Shaw had provided her with free samples of crack cocaine in the past.  Ex. 48 at 161-63.  Ms. Fulmer also testified that Mr. Shaw offered to give her money if she testified that she did not see anything.  Ex. 47 at 89-90.  Mr. Heiges likewise testified that he and Ms. Fulmer went to the gas station to buy cocaine.  Ex. 48 at 214-16.  Mr. Heiges testified that he saw the baggie found by the officers while he was detained at the gas station; he directly testified that the baggie contained cocaine.  Id. at 220.  Mr. Heiges further testified that Mr. Shaw offered to bribe him to testify that the cocaine belonged to another person.  Id. at 224-25.

Finally, Mr. Shaw testified.  Mr. Shaw admitted that he was a drug dealer and that he had used cocaine in the past, but denied dealing drugs on that particular day.  Ex. 49 at 398-402.  Mr. Shaw denied that the baggie found by the officers was his, but he did not deny that the baggie contained drugs.  Id. at 401-02.  In fact, Mr. Shaw referred to the "bag of drugs" during his testimony.  Id. at 401.  The issue Mr. Shaw disputed at trial was not whether the substance was cocaine, but whether he was the person who possessed the cocaine.  See Ex. 50 at 461-78.

As to the September 2 incident, Officer Braley testified that she posed as "Christy," and arranged to buy cocaine from Mr. Shaw at Albertsons.  Ex. 43 at 119-37.

ORDER – 14

Mr. Waclawski, who was arrested with Mr. Shaw, testified that he and Mr. Shaw went to Albertsons to sell cocaine to a woman named "Christy." Id. at 74-75. Mr. Waclawski directly testified that Mr. Shaw possessed cocaine; he also testified that the substance seized from Mr. Shaw's car at Albertsons was cocaine. Id. at 75. Officer Fifield testified that following Mr. Shaw's arrest, officers found in Mr. Shaw's car a plastic baggie containing, based upon his experience, what appeared to be cocaine. Id. at 149-54. In addition to the baggie, a search incident to arrest unveiled a metallic smoking pipe, hypodermic syringes, and $205 in Mr. Shaw's sock. Id. at 157-68, 192-93. Finally, Officer Taylor testified that Mr. Shaw admitted under oath in a prior trial – i.e., the trial concerning the July 24 incident described above – that during this time he was a drug dealer who dealt in cocaine. Id. at 211-13.

This testimony of the officers, eyewitnesses, and Mr. Shaw himself both corroborated the results of Mr. Hoover's drug tests and provided independent proof that Mr. Shaw possessed cocaine. In light of all of the evidence before the jury in each case, the court finds that the state courts reasonably concluded that the undisclosed evidence of Mr. Hoover's heroin use would not have been critical to the jury's assessment of the substance at issue. At a minimum, the state courts' decision was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, the court denies Mr. Shaw relief on the basis of his Brady claim.

The court concludes by acknowledging the gravity of the facts of this case. It is troubling to consider the introduction of a forensic chemist's testimony against a criminal defendant, who is facing the deprivation of liberty, without apprising the defendant or his counsel that the chemist may have been under the influence of heroin. There is no question that Mr. Shaw was deprived of the opportunity to fully and adequately cross-examine Mr. Hoover on his findings that the substances tested positive for cocaine. Even so, that is not the test for federal habeas relief. In enacting AEDPA, Congress "intended to give effect to state convictions to the extent possible under the law. When federal courts are able to fulfill [this goal] within the bounds of the law, AEDPA instructs them

ORDER – 15

to do so." Williams, 529 U.S. at 386.  Under the present circumstances, this court is not at liberty to disrupt the finality of Mr. Shaw's state court convictions.

## IV.  CONCLUSION

For the foregoing reasons, the court ADOPTS IN PART Judge Donohue's R&R (Dkt. # 20) to the extent that it recommends dismissing Mr. Shaw's claim based on disruption of the chain of custody of drug evidence.  The court declines to adopt Judge Donohue's recommendation as to Mr. Shaw's Brady claim.  The court dismisses this claim.

Thus, the court DENIES Mr. Shaw's petition for writ of habeas corpus (Dkt. # 1) and DENIES Mr. Shaw's motion for release from custody (Dkt. # 23).  The court DISMISSES this action with prejudice.  The court directs the clerk to enter judgment consistent with this order.

Dated this 25th day of April, 2007.


JAMES L. ROBART
United States District Judge

ORDER – 16